# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## CROOK v. RIDER.

### Opinion delivered November 20, 1922.

1. DEEDS—EFFECT OF SURRENDER OF DEED.—Where a deed executed to two grantees was surrendered by one of them without the other grantee's consent, the execution of a new deed to one of the grantees did not deprive the other grantee of his interest, since the destruction or surrender of the first deed did not revest title in the grantor.

2. VENDOR AND PURCHASER—INNOCENT PURCHASER—BURDEN OF PROOF.—In an action to quiet title against a defendant, where the undisputed evidence showed that defendant paid value for the land, the plaintiff had the burden of showing that the defendant purchased the land with notice of plaintiff's claim.

3. VENDOR AND PURCHASER—PURCHASE WITH NOTICE.—In an action to quiet title, evidence held to sustain finding that defendant purchased the land with notice of plaintiff's claim.

Appeal from Yell Chancery Court, Dardanelle District; *W. E. Atkinson*, Chancellor; affirmed.

#### STATEMENT OF FACTS.

J. L. Rider brought this suit in equity against F. M. Crook to quiet his title to an undivided one-half interest in two lots in the town of Ola, Yell County, Ark. The defendant denied that the plaintiff had any interest whatever in the lots, and asserted title in himself.

It appears from the record that the lots were originally owned by T. M. Morris, and that he exchanged them with C. R. Sudberry for a tract of land in Yell County, Ark. T. M. Morris executed a deed to the lots in controversy to C. R. Sudberry and J. L. Rider. Several months later Sudberry returned the deed from Morris to him-

self and Rider and received a deed from Morris to himself to said lots. Subsequently Sudberry conveyed said lots to defendant, Crook, for the sum of $600. Crook received possession of the lots from Sudberry.

J. L. Rider was a witness for himself. According to his testimony, he met Charles R. Sudberry, who owned 240 acres of land about 26 miles from Ola, in Yell County, Ark. Sudberry listed this land with R. D. McMullen for sale. Subsequently Sudberry interested Rider in the place, and offered to give him a one-half interest in all money or property he should receive for it. The fields were growing up, and the fences and houses had become badly out of repair. Rider cleared up some of the land and fixed the fences and houses in good repair. He also made a crop of corn and cotton on the place in 1917, and, after he had laid by his crops, estimated that he would make two and a half bales of cotton and 200 bushels of corn. In the fall of 1917, corn was worth $1.50 a bushel and cotton was worth twenty cents per pound. The land was exchanged by Sudberry with Morris for the town property in Ola, in September, 1917. R. D. McMullen prepared the deed from Morris to the town property, and Sudberry and Rider were both named as grantees in the deed. Rider informed Crook of his interest in the town lots before the latter purchased them from Sudberry. In this respect the testimony of Rider is corroborated.

On the other hand, F. M. Crook testified that he purchased the property from C. R. Sudberry and paid him $600 for it, which was it full value. He denied that he knew that J. L. Rider claimed any interest in the property at the time he purchased it, or that he ever told any one that he had been informed that Rider had an interest in the property. His testimony in this respect is also corroborated. The evidence on the question of notice will be stated more in detail in the opinion.

The chancellor found the facts in favor of the plaintiff, and a decree was entered accordingly in his favor.

To reverse that decree the defendant has duly prosecuted an appeal to this court.

*M. L. Davis, J. T. Bullock* and *A. S. Hays,* for appellant.

Purchasers of land are required to spread upon the record evidence of their ownership; and if others suffer from their neglect the law will not recognize such ownership. C. & M. Dig., sec. 855; 70 Ark. 256; 1 Warv. Vendors, 542; Webb, Record of Title, § 168; 2 Sugden, Vendors, 978; 46 Mo. 239; 38 Fed. Rep. 455. Where one purchases land in good faith and for a valuable consideration, and enters into possession, he acquires a good title as against an unrecorded title of a prior purchaser. 56 Ark. 39. Proof of notice of an unrecorded deed must be established like any other fact. 23 R. C. L. 264; 20 R. C. L. 340; 3 Am. Rep. 249; 64 Am. Dec. 234.

*Wilson & Chambers* and *R. F. Sandlin,* for appellee.

Where one has an opportunity of reading a deed before signing same, ignorance of its contents cannot be pleaded in an action to set it aside. 196 S. W. 1065; 71 Ark. 185. Where one executes and delivers a deed for the conveyance of land, the title vests in the grantee, and he cannot divest himself of it by merely canceling the deed or surrendering it to the grantor. 52 Ark 483. Destruction of a deed after delivery does not affect its title. 108 Ark. 491; 220 S. W. 904. A grantor is not reinvested with title by surrender of the deed by the grantor. 224 S. W. 467; 220 S. W. 469. The appellant had actual notice. 135 Ark. 205; 20 R. C. L. 340; 71 Ark. 31; 77 Ark. 309; 94 Ark. 503; 125 Ark. 441; 137 Ark. 18; 238 S. W. 19.

HART, J., (after stating the facts). It is established by the evidence that when Sudberry exchanged his farm for the town lots in question with Morris, the latter executed a deed to said town lots to Sudberry and Rider. This fact is testified to by R. D. McMullen. It is true that Morris stated that he did not know that Rider was concerned in the transaction, but he admits that some

months afterwards Sudberry returned his deed to the town lots in which both Sudberry and Rider were named as grantees, and that he executed another deed to the property in which Sudberry alone was named as grantee. This clearly establishes the fact that Morris conveyed the town lots to Sudberry and Rider as tenants in common. Sudberry is not a party to this action, and does not ask any relief against Rider. The subsequent destruction or surrender of the deed from Morris to Sudberry and Rider did not reinvest the title in Morris. Nothing short of a reconveyance would have done so. *White* v. *Moffett,* 108 Ark. 491.

But it is claimed by the defendant that he is a *bona fide* purchaser for value of the lots in controversy. The undisputed evidence shows that the defendant paid value for the lots, and the burden of showing that he purchased the lots with notice of the claim of Rider was upon the latter. *Shenoy* v. *Phipps,* 145 Ark. 121. The chancellor found this issue in favor of the plaintiff, and it cannot be said that his finding is against the weight of the evidence.

On the question of notice as to Rider's claim to a one-half interest in the property, the testimony of the parties to the lawsuit is in direct and irreconcilable conflict. On the one hand, the plaintiff, in most positive terms, states that he told the defendant that he had a one-half interest in the property. The defendant is equally positive that no such conversation ever took place between them, and states that he did not know until after he had purchased the property that the plaintiff claimed any interest in it.

The plaintiff attempts to corroborate his testimony by an admission of the defendant to the effect that his landlady might have told him before he purchased the property that Rider was claiming an interest in it. The defendant, in explanation, said that he did not think his landlady told him this, and that, if she did, it was only a casual statement to which he paid no attention, because she talked so much.

Again, the plaintiff claims that he is corroborated by the testimony of W. M. Hope to the effect that defendant had told him that he knew that Rider claimed to have an interest in the property when he bought it, but that he did not think Rider had any interest in it. Several witnesses were introduced by the defendant to testify that Hope's reputation for truth was bad. Therefore, the defendant insists that his testimony does not corroborate that of the plaintiff.

The testimony of the plaintiff, however, is corroborated by that of R. F. Sandlin. It is true that Sandlin is one of the attorneys for the plaintiff, but it is not shown that he is otherwise interested in the controversy. Rider and Sudberry were about to have a lawsuit in which this and other property was involved. Rider employed Sandlin as his attorney. Sandlin heard that Crook was about to purchase the property in controversy, and, meeting Crook at the depot in Ola, asked him about it. Crook said that he had not bought the property, but that Sudberry was trying to sell it to him, and that he was figuring on buying it. Sandlin told Crook that Rider claimed an interest in the property, and that he would buy a lawsuit if he purchased the property. It is true that Crook denied having had this conversation with Sandlin, but his interest in the matter is greater than that of Sandlin, and, when we consider the testimony as a whole, we do not think it can be said that the decision of the chancellor should be overturned.

It follows that the decree will be affirmed.